UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
THE HASKELL COMPANY,           :
           :
       Plaintiff,       :
           :    **MEMORANDUM AND ORDER**
    -against-       :    05-CV-04403 (DLI)(MDG)
           :
RADIANT ENERGY CORPORATION, and  :
RADIANT AVIATION SERVICES, INC.,  :
           :
      Defendants.    :
------------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff The Haskell Company ("Haskell" or "plaintiff") filed this diversity action against defendants Radiant Energy Corporation ("REC") and Radiant Aviation Services, Inc. ("RAS") (collectively, "defendants") alleging breach of an oral contract, unjust enrichment, quantum meruit, and account stated. Defendants move, pursuant to Fed. R. Civ. P. 12©, to dismiss all of plaintiff's causes of action for failure to state a claim and for lack of personal jurisdiction based on deficient service. Defendants also urge the court to convert the motion to one for summary judgment and to evaluate it pursuant to Fed. R. Civ. P. 56. For the following reasons, defendants' motion to dismiss is converted to a motion for summary judgment and is granted in part and denied in part.

<u>**Conversion to Summary Judgement Motion**</u>

Hoping to dispose of the case without the need for costly discovery, defendants strongly urge the court to consider matters outside the pleadings, namely affidavits submitted by Colin V.F. Digout, Maryanne Digout, Timothy P. Seel, a declaration of Steve V. Suneson and an affidavit by Joe Narby, on behalf of plaintiff. Defendants have also submitted a Local Rule 56.1

Statement of Material Facts, which is essentially a summary of the various affidavits submitted by defendants, without the benefit of deposition transcripts, interrogatory responses or plaintiff's documents since no discovery has taken place. To consider matters extrinsic to the pleadings, the court must convert defendants' motion for judgment on the pleadings into a motion for summary judgment, and determine the motion on the basis of the admissible evidence submitted by the parties. *See Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988).

A court may not convert a motion made under Rule 12 into a motion for summary judgment without the opposing party receiving adequate notice and being afforded an opportunity to respond. *See, e.g.*, *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995). A party is deemed to have notice that a motion may be converted into one for summary judgment if that party "should reasonably have recognized the possibility" that such a conversion would occur. *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999). In this case, the court finds that plaintiffs have been provided adequate notice and opportunity to respond.

First, defendants attached to their motion extensive materials that were not included in the pleadings, plainly putting plaintiff on notice of the likelihood of a conversion. *Sira v. Morton,* 380 F.3d 57, 63 (2d Cir. 2004). Second, the notice of motion stated defendants' intention to seek a conversion. *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 573-574 (2d Cir. 2005) (the fact that motion states that party seeks summary judgment in the alternative is factor in determining if plaintiff had notice). Moreover, plaintiff itself submitted extrinsic materials (namely the affidavit of Joe Narby), and plaintiff makes reference to summary judgment in its legal memorandum. *See Carione v. U.S.,* 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005) ("where the non-movant responds to the motion by filing his own affidavit and

specifically addressing the summary judgment argument in his memorandum of law in opposition, the non-movant has sufficient notice that the court might treat the motion as one for summary judgment.").

Plaintiff objects to converting the motion to one for summary judgment because it has not had the opportunity to seek discovery. *See* Plaintiff's Memorandum of Law in Response to Motion to Dismiss ("Pl. Memo") 1 n.1. The timing of the motion so soon after the filing of the complaint is of no moment since summary judgment may be sought at any time after a pleading is served. *Id.* However, as plaintiff points out, caution should be exercised in granting summary judgment when the non-moving party lacks relevant discovery. *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). While the court may take into account the existence of material issues of fact and deny summary judgment as premature, the lack of discovery, *per se,* is not a ground to deny a conversion of which the opposing party had notice and was given ample opportunity to answer.[1] Plaintiff could have used the lack of discovery as a ground to resist summary judgment. *See* Fed. R. Civ. P. 56(f). A lack of discovery is not, however, a ground to resist a conversion, especially where, as here, the non-moving party has not submitted an affidavit attesting to what discovery is needed. *See Concourse Rehabilitation & Nursing Center Inc. v. Whalen*, 249 F.3d 136, 146 n.3 (2d Cir. 2001) (granting summary judgment where a party failed to submit an affidavit attesting to its need for additional discovery). Here, plaintiff's objection to the conversion due to lack of discovery amounts to no more than a passing reference in a footnote, which also states that it submitted an affidavit of additional facts in opposition to the

---

[1] At the February 22, 2006, Pre-motion conference, the court allowed the defendants to make their motion but expressed skepticism that, in a case with so many factual issues, summary judgment would be granted in the absence of additional discovery. Plaintiff now claims that this skepticism was the equivalent of the court denying defendants the opportunity to move for summary judgment, which it clearly was not.

summary judgment motion. Accordingly, defendants' motion for judgment on the pleadings is converted to one for summary judgment.

## Background

On November 8, 2001, Colin Digout and Tim Seel, on behalf of defendants, and Jess Simmons and Joe Narby on behalf of plaintiff, met at defendants' headquarters to discuss whether to enter into a business relationship.[2] Statement of Material Facts Pursuant to Rule 56.1 ("Rule 56.1 Stat.") ¶ 1; Affidavit of Joe Narby ("Narby Aff.") ¶ 2. As part of the business relationship, plaintiff was to provide, for an as yet undetermined fee, engineering and planning services to defendants to assist in the design and construction of de-icing systems. *Id.* On November 28, 2001, plaintiff sent defendants a letter proposing how the de-icing system could be marketed and financed. Rule 56.1 Stat. ¶ 2. One potential customer was John F. Kennedy International Airport ("JFK"), managed by the Port Authority of New York and New Jersey ("Port Authority"). *Id* ¶ 5. Although the Port Authority was interested, actual approval of the plan required several additional steps, including obtaining funding and obtaining the approval of the Port Authority board. The Port Authority wanted to work only with one contractor. Thus, plaintiff and defendants entered into discussions whereby plaintiff was to be defendants' sub-contractor. *Id.* The contract for construction of the facility was to be between defendants and the Port Authority. *Id.* ¶ 6.

According to plaintiff, during the second half of 2002, plaintiff entered into an oral agreement with defendants whereby plaintiff was to engineer, design and construct the de-icing

---

[2]  Plaintiff has failed to submit a Counter Statement of Disputed Facts pursuant to Local Rule 56.1(c). Therefore, all of defendants' material facts are deemed admitted. *See, e.g., EQ Transp., Inc. v. TNT Transp., Inc.,* 04 CV 5711, 2005 WL 1492379 (E.D.N.Y. June 24, 2005).

facility at JFK on behalf of defendants. Narby Aff. ¶ 3. The Port Authority invited defendants to give a presentation on how they would construct the facility at JFK. Rule 56.1 Stat. ¶ 7. Defendants invited plaintiff to participate. *Id.* On October 18, 2002, Ian Sharkey on behalf of defendants, and Simmons and Narby on behalf of plaintiff attended a meeting with Port Authority officials.[3] Narby Aff. ¶ 4; Rule 56.1 Stat. ¶ 8. Sharkey is an account manager for defendant REC and was not an "executive officer" of defendants. *Id.* The minutes of the meeting state that "Haskell Co., as the agent appointed contractor of RAS, will perform the engineering, design and construction of the Radiant deicing pads including the foundations." Narby Aff. Exhibit 1. The Port Authority's minutes encourage the meeting participants to "supplement, clarify or add to these [minutes] or one shall be deemed to have agreed to the contents." *Id.*

After the October 18, 2002, meeting, the parties continued to negotiate the pricing structure of their contract. Rule 56.1 Stat. ¶ 9. Defendants favored giving plaintiff a percentage of the gross fee received from the Port Authority while plaintiff favored being paid a straight fee for engineering services. Rule 56.1 Stat. ¶ 9. According to defendants, plaintiff performed a cost-analysis to see whether a percentage of the gross fee would be profitable. *Id.* at 11. Defendants provided plaintiff with detailed cost estimates to aid the cost-analysis. *Id.* At the same time, plaintiff alleges that it began substantive engineering work that was needed to construct the facility, including contacting subcontractors and vendors and "performing electrical load calculations for emergency generator sizing and performed calculations for footing sizing

---

[3]     For reasons which remain unclear, defendants state that this meeting took place on November 18, 2002. However, the minutes of the meeting, annexed to the Narby Aff. as Exhibit 1, clearly state that the meeting took place on October 18, 2002.

based on reactions supplied by the metal building manufacturer." Narby Aff. ¶ 7. Plaintiff also provided defendants updates on its work, including budgets and technical information. *Id.* at ¶ 8.

In June 2003, plaintiff presented an agreement to defendants governing their cooperation on the JFK project. Rule 56.1 Stat. ¶ 13; Exhibit D to the Affidavit of Colin V.F. Digout. The "Joint Agreement" expresses the parties' desire to contract and to "design and construct the Project in accordance with a Contract Agreement to be attached hereto as Exhibit A." *Id.* The Joint Agreement contained a merger clause which prohibited subsequent agreements from altering any prior written agreement. *Id.* The agreement was never signed because the parties could not come to an agreement on the price term. Rule 56.1 Stat. ¶ 16-17. After the agreement fell apart (sometime after June 2003), the parties did not have any significant contact. *Id.* at 17. The Port Authority awarded defendants the contract in June 2004 based on a proposal submitted by defendants in early 2004. *Id* at 18-19. Another firm (not plaintiff) performed the design and engineering work for the project. *Id.*

On July 22, 2004, plaintiff began to invoice defendants for the work performed in connection with the project. Narby Aff. ¶ 10; Rule 56.1 Stat. ¶ 21-22. Defendants did not object to the invoices. Narby Aff. ¶ 11-12. Plaintiff and defendants discussed the invoices, and defendants offered to pay so as not to jeopardize the project or their relationship with the Port Authority. Rule 56.1 Stat. ¶ 23-24. After defendants and the Port Authority entered into a contract in February 2005, defendants asked if plaintiff wished to act as defendants' general contractor. Rule 56.1 Stat. ¶ 25-27. Plaintiff declined. Rule 56.1 Stat. ¶ 28-29.

<u>Service of Process</u>

On October 6, 2005, plaintiff personally served defendant REC through Mary Digout, the wife of Colin Digout, at their home, 721 Sugarloaf Street in Port Colborne, Ontario, Canada. Rule 56.1 Stat. ¶ 31; Affidavit of Christine M. Fecko ("Fecko Aff") Exhibit A. According to plaintiff, Mary Digout stated that she was "in care and control of Radiant Energy Corporation." *Id.* Defendants deny that Mary Digout ever represented that she was authorized to accept service for REC. Rule 56.1 Stat. ¶ 31. The REC's business address at the time was 176 Saint Catharine, Port Colborne, Ontario, Canada, not Colin Digout's home. *Id.* at 32. Mary Digout's affidavit is completely silent as to whether she made any representation that she was either authorized to accept service or was in care and control of REC.

Defendant RAS is a wholly owned subsidiary of defendant REC. Defendant REC conducts all its business through defendant RAS. RAS operates a "virtual office environment," meaning that its employees work from home. One employee, Tim Seel, works from his home in Getzville, NY. Fecko Aff. Exhibit C; Rule 56.1 Stat. ¶ 33. Seel also invented the technology marketed and sold by defendants. Fecko Aff. Exhibit C. On October 6, 2005, plaintiff served defendant RAS at Seel's home address, 155 Golden Pheasant Drive, Getzville New York. Fecko Aff. Exhibit B. According to plaintiffs, Seel stated that he was authorized to accept service of process for RAS. *Id.* According to defendants, Seel stated he was not. Rule 56.1 Stat. ¶ 34. Seel, in his affidavit, states that he told the process server he was not authorized to accept service on behalf of REC, but when the process server asked if Seel could take the papers anyway, Seel stated he thought he could. *See* Affidavit of Timothy Seel, ¶¶ 1-2.

## Discussion

Service of Process

Both defendant REC and defendant RAS move to dismiss the claims asserted against them for lack of personal jurisdiction on the ground that service of the summons and complaint was defective. Defendants do not otherwise contend that they are not subject to personal jurisdiction in this court. Plaintiff attempted to serve process on defendants pursuant to Fed. R. Civ. P. 4(h), which prescribes methods to effect service of process on a corporation. Defendants do not argue that they did not receive actual notice of this action. The Second Circuit has stated that "The standards set in Rule 4. . . for service on individuals and corporations are to be liberally construed, to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972). However, the Second Circuit has also instructed that "incomplete or improper service will lead the court to dismiss the action unless it appears that proper service may still be obtained." *Id.*

Plaintiff served defendant RAS by leaving a copy of the summons and complaint with Seel at Seel's home in Getzville, New York. Because RAS is located within a judicial district of the United States, plaintiff could effectuate service upon RAS by (1) delivering a copy of the summons and complaint to an officer, a manager or a general agent "or any other agent authorized by appointment or by law to receive service of process;" or (2) pursuant to New York Law. *See* Fed. R. Civ. P. 4(h). Seel had submitted an affidavit stating that, since May of 2002, he has not served as an "officer or director" for RAS and has "no management or financial authority." Seel's contention is buttressed by the REC "business plan" annexed to the Fecko Aff. which states that, in April 2001, Seel "relinquished his title of Vice President of

Engineering and Officer and his seat on the board due to insurance concerns." The court is satisfied that, in October 2005, when RAS was served, Seel was not an authorized agent for service on behalf of RAS. Moreover, there is no indication that the process server acted reasonably in assuming that Seel was authorized to accept service, since the "business plan" did not identify him as an officer. *See Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002).

However, that is not the end of the inquiry. Evidence indicates that Seel was integrally involved in REC: He had attended meetings with plaintiff, founded REC, was the inventor of the technology sold by REC, and was one of only three employees listed in the "business plan." Courts have found that "Rule 4(h)(1) does not require 'rigid formalism.'" *Nature's First Inc. v. Nature's First Law, Inc.*, 436 F. Supp. 2d 368, 374 (D. Conn. 2006) (*quoting Am. Inst. of Certified Pub. Accountants v. Affinity Card*, 8 F. Supp. 2d 372, 375 (S.D.N.Y. 1998)); *see also Jin v. EBI, Inc.*, 05 CV 4201, 2006 WL 3335102, *7 (E.D.N.Y. Oct. 17, 2006). In *Nature's First*, the court stated that, although the person served may not be authorized to receive service, where the corporation received actual notice and the person served was knowledgeable about what to do with the papers and "well integrated" into the organization, service on that individual is sufficient. *See id. (citing Montclair Electronics, Inc. v. Electra/Midland Corp.*, 326 F. Supp. 839, 842 (S.D.N.Y. 1971) and *Insurance Company of North America v. S/S Hellenic Challenger*, 88 F.R.D. 545 (S.D.N.Y. 1980)). Seel accepted the papers, and apparently RAS received actual notice of the action. *See e.g. Jin v. EBI, Inc.*, 2006 WL 3335102 at *7 ("[t]hat EBI's administrative assistant redelivered the papers to one authorized to accept service is evidenced by the fact that the defendants were able to file responses to the Complaint and therefore must

have had notice of the filing of the Complaint in a timely fashion."). Based on Seel's significant involvement in RAS, the court has no doubt that he is "well integrated" into the organization for purposes of Fed. R. Civ. P. 4(h) service.

RAS was also properly served under New York law. Statutorily, New York law only differs from Rule 4(h) in that it allows service on a "cashier or assistant cashier" in addition to the individuals listed in Rule 4(h). *See* N.Y. C.P.L.R. § 311(a)(1) (McKinney 1999). New York courts have interpreted C.P.L.R. § 311(a)(1) broadly. *See McDonald v. Ames Supply Co.,* 22 N.Y.2d 111 (1968). In *McDonald*, the New York Court of Appeals held that, even if the person served is not the proper individual to receive service pursuant to C.P.L.R. § 311(a)(1), service is nonetheless effectuated when (1) the process server acted with "due diligence" in attempting to satisfy the statutory requirements; (2) the process server served an employee who is in fact not authorized to accept service; and (3) the employee then re-delivered the papers to someone who is authorized to accept service. *Id; See also Martin v. Archway Inn,* 164 A.D.2d 843, 844-45(1st Dept 1990) (finding service was proper even though individual served did not hold one of the positions specifically enumerated in CPLR § 311(1)); *Melkaz Int'l Inc. v. Flavor Innovation, Inc.*, 167 F.R.D. 634, 642-43 (E.D.N.Y. 1996) (holding service on corporation proper where a process server identified himself to corporate defendant's employee and stated he was there to serve legal papers and the employee re-delivered the summons and complaint to an employee authorized to accept service). Here, the process server believed that Seel was one of only three employees of defendant RAS and further believed that each employee worked from home. Seel accepted the papers and provided them to the appropriate individual at RAS within the statutory

time to answer the complaint. Thus, the court is satisfied that, under New York law, RAS was properly served through Seel.

Service on defendant REC presents a different problem. Plaintiff's process server served the wife of an executive officer of the REC at the officer's home in Canada. Because REC is located in a foreign nation, service must take place pursuant to Fed. R. Civ. P. 4(h)(2). For the purposes of this action, Rule 4(h)(2) allows service in a foreign country to take place by (1) any internationally agreed means, such as the Hague Convention; (2) a manner prescribed by the law of the nation in which service is made; (3) any form of mail requiring a signed receipt, sent from the clerk of the court; and (4) as directed by the court. *See* Fed. R. Civ. P. 4(f). Plaintiff apparently chose to use the Hague Convention, which allows service to be accomplished through a central authority in Canada or in compliance with Canadian procedures, so long as Canada does not specifically object to the use of those procedures. Nov. 15, 1965 ("Hague Convention"), [1969] 20 U.S.T. 361, T.I.A.S. No. 6638; *see also Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694 (1988); *Riendeau v. St. Lawrence & Atlantic R. Co.,* 167 F.R.D. 26 (D. Vt. 1996). Under the Hague Convention, plaintiff could have effectuated process by mailing the summons and complaint to REC's corporate address in Canada or by complying with Canadian procedures, since Canada does not object to such service. *See Ackermann v. Levine,* 788 F.2d 830, 838-39 (2d Cir. 1986); *Anderson v. Canarail, Inc.*, 05 CV 3828, 2005 WL 2454072,* 4 (S.D.N.Y. Oct. 6, 2005) (Hague Convention allows service by mail in Canada); *Heredia v. Transport S.A.S., Inc.*, 101 F. Supp. 2d 158 (S.D.N.Y. 2000). For reasons which are never explained, plaintiff chose to hire a process server and serve REC personally.

The issue then becomes whether such service comports with the procedural requirements of the Province of Ontario.[4]

Pursuant to Ontario law, service on a corporation is made "by leaving a copy of the document with an officer, director, or agent of the corporation, or with a person at any place of business of the corporation who appears to be in control or management of the business." *See* Ontario Rule of Civil Procedure 16.02©; *Jerge v. Potter*, 99 CV 0312E, 2000 WL 1160459, *1-2 (W.D.N.Y. Aug. 11, 2000). Plaintiff served Mrs. Digout with the summons and complaint. The affidavit filed by the process server indicates that "Mary Digout . . . stated that she was in care and control of Radiant Energy Corporation." Notably, Ms. Digout's affidavit is totally silent on this issue. She neither confirms nor denies that she told the process server that she was in the care or control of REC. Moreover, because the process server believed that he was serving REC at its business address, Mrs. Digout, when answering the door, appeared to be in control.

The Second Circuit has explained that affidavits of service establish a prima facie case that service was effected or attempted in the manner described therein. *Old Republic Ins. Co.*, 301 F.3d at 57. However, the Second Circuit has also held that "[a] defendant's sworn denial of receipt of service . . . rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing." *Id; see also Davis v. Musler*, 713 F.2d 907 (2d Cir. 1983) (holding that the district court abused its discretion by failing to hold an evidentiary hearing to resolve the issue of whether service had been effected in light of the directly conflicting affidavits submitted by the process server and by the defendants). In this

---

[4]    Neither party briefed, and the court will not decide, whether, under New York law, RAS was an instate agent of REC for service purposes. However, based on what is known of the relationship between the two defendants, this is certainly an avenue that could have been explored by plaintiff. *See, e.g. Stutts v. The De Dietrich Group*, 03 CV 4058, 2006 WL 3388648, *5+ (E.D.N.Y. Nov 21, 2006).

case, there is no conflict between the affidavit submitted by plaintiff's process and server and the affidavit submitted by Mary Digout. Because the affidavit of the process server indicates that Mrs. Digout stated she was in control of REC, and defendants have not stated offered any contradictory evidence, plaintiff has established a prima facie case that service was effected on REC. Therefore, defendants' motion to dismiss the action for lack of personal jurisdiction with respect to either REC or RAS is denied.

<u>Defendants' Motion for Summary Judgment</u>

Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. The court must view all facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48. In order to prove that a genuine issue of material fact exists, a non-moving party "may not rest upon the mere allegations or denials of the pleading[s]," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. *See Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir. 1997). If the initial burden is met, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists. If the evidence [presented by the non-moving party] is merely colorable, or is not

significantly probative, summary judgment may be granted." *Scotto Almenas,* 143 F.3d 105, 114 (2d Cir.1998) (internal quotations and citations omitted) (alteration in original). Even where there appears to be a genuine issue of material fact, the Supreme Court has instructed that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007).

*Breach of Contract Claim*

Plaintiff claims that defendants breached an oral agreement under which defendants hired plaintiff to design and construct a portion of the JFK facility. New York law recognizes the existence of oral contracts. *Winston v. Mediafare Entertainment Corp.,* 777 F.2d 78, 80 (2d Cir. 1985) ("[u]nder New York law, parties are free to enter into a binding contract without memorializing their agreement in a fully executed document."). Whether or not a contract was formed depends on the intent of the parties at the time of contract formation. *Id.* Courts have developed a four-factor test to determine whether the parties intended to be bound by their agreement: (1) has there been an express reservation between the parties not to be bound absent a formal writing; (2) has one party partially performed the contract; (3) are there material terms left to be negotiated; and (4) is it the type of agreement that is usually reduced to a writing. *Shaftel v. Dadras,* 39 F. Supp. 2d 217, 226 (E.D.N.Y. 1999) (citing *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997)).

In support of their motion for summary judgment, defendants rely on the contract drafted by plaintiff several years after the alleged oral contract was entered into. The drafted contract

appears to manifest an intent to contract at that time, but not prior thereto. Presumably, defendants are asserting that the existence of a subsequent written contract is evidence that the parties did not intend to be bound absent the writing. However, even if the subsequent contract draft is evidence that the parties intended to memorialize their agreement in writing in the future, "[simply because the parties contemplate memorializing their agreement in a formal document does not prevent their agreement from coming into effect before written documents are drawn up." *Consarc Corp. v. Marine Midland Bank*, 996 F.2d 568, 574 (2d Cir. 1993). Moreover, courts have found that it is incumbent upon the party who does not wish to be bound by an oral contract to "communicate an intent not to be bound." *See Winston,* 777 F.2d at 80. In this case, there is no evidence that defendants expressed a desire not to be bound by a preliminary oral agreement.

With respect to the second factor, partial performance, plaintiff has stated that it began work on the contract with defendants' knowledge. As evidence that work was done, plaintiff has annexed an invoice sent to defendants. Although plaintiffs may have been mistaken, it is highly unlikely that they would have started working absent a belief that an agreement was in place. *R.G. Group, Inc., v. Horn & Hardart Co.*, 751 F.2d 69, 75 (2d Cir. 1984) ("[p]artial performance is an unmistakable signal that one party believes there is a contract."). Defendants, for their part, contend that the work performed was for the purposes of conducting a cost analysis to develop a pricing structure for an eventual contract. Thus, a genuine issue of fact exists with respect to whether the performance was linked to the oral agreement. *Koch v. Multipan, Inc.*, 99 CV 11277, 2001 WL 210004, * 4 (S.D.N.Y., Feb 16, 2001); *see also Shaftel v. Dadras*, 39 F. Supp. 2d 217, 230 (E.D.N.Y. 1999).

The genuine issues of fact outlined above notwithstanding, plaintiff has failed to state the oral agreement's terms beyond simply asserting that the parties reached an agreement whereby plaintiff would serve as defendants' "agent appointed contractor."  This creates a barrier to plaintiff's breach of contract claim because a lack of terms is evidence that the parties may not have intended to be bound by the oral contract. *C.f. Consarc Corp.,* 996 F.2d 568 at 574. ("if the parties have settled on the contract's substantial terms, a binding contract will have been created.").  The undisputed lack of terms for the alleged oral agreement weighs heavily in favor of the defendants' contention that there was never an oral agreement.  *See Shanghai Join Buy Co., Ltd. v. Pstex Group, Inc.*, 04 CV. 4449, 2004 WL 2471432, *2 n. 5. (S.D.N.Y. Nov. 1, 2004); *see also Consarc Corp.*, 996 F.2d at 574 ("if the parties have *settled on the contract's substantial terms*, a binding contract will have been created, even though they also intended to memorialize it in a writing.") (emphasis added).  Although plaintiff contends that a binding oral contract was created, it has not provided *any* terms of the contract, and relies only on the *purpose* of the contract.

Under New York law, "[b]efore the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained." *Martin v. Schumacher*, 52 N.Y.2d 105, 109 (1981).  "It is axiomatic therefore that 'a mere agreement to agree, in which a material term is left open for future negotiations, is unenforceable.'" *See Spherenomics Global Contact Centers v. Customer Corp.,* 427 F. Supp. 2d 236, 247 (E.D.N.Y. 2006); *see also Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, (1989), *cert. denied*, 498 U.S. 816 (1990) ("[f]ew principles are better settled in the law of contracts than the requirement of definiteness. If an agreement is not reasonably certain in its

material terms, there can be no legally enforceable contract."); *Brands v. Urban*, 182 A.D.2d 287, 289 (2d Dep't 1992) (summary judgment is appropriate where there was no meeting of the minds on the material element of price). The essential terms of a contract include the identification of the parties, a sufficient description of the subject matter and consideration. *Id.* ("it is axiomatic that price is an essential ingredient of every contract for the rendering of services, the agreement must be definite as to compensation."); *Scherer v. Kane*, 98 CV 3186, 2006 WL 3375639, *7 (S.D.N.Y. Nov. 17, 2006) (holding that a description of the subject matter and consideration are the "minimum terms" of any contract).

In this case, plaintiff does not state the subject matter of the oral contract. Plaintiff only claims that, "during the second half of 2002" it and defendants entered into an "oral agreement whereby Haskell was to engineer, design and construct a deicing facility for defendants to employ in connection with RAS's contract to build a de-icing facility at JFK airport." It is undisputed that RAS was not awarded the contract until June of 2004. Thus, it is not credible that plaintiff was performing work under a contract between the Port Authority and defendants that did not exist at the time. Plaintiff has not provided a sufficient description of the subject matter of the alleged oral contract and there is insufficient evidence in plaintiff's opposition papers to demonstrate a material issue of fact with respect to whether or not a contract existed. Finally, plaintiff does not describe the price structure of the alleged oral agreement.

Examining all the evidence in the light most favorable to the non-moving party, the best that can be said is that plaintiff was performing work related to bidding on the de-icing facility,

perhaps hoping to contract with defendants a later time.[5]  However, defendants are entitled to summary judgment regarding the existence of the oral contract since this was merely work in anticipation of an agreement.  *See Adjustrite Systems, Inc. v. GAB Business Services, Inc.,* 145 F.3d 543 (2d Cir. 1998) (upholding a district court's grant of summary judgment where the parties only had an "agreement to agree.").  The court also finds that contracts for construction services are customarily in writing. *See Brown v. Cara,* 420 F.3d 148, 158 (2d Cir. 2005) ("there can be little debate that creation of the holding corporation, construction, financing, and management of the Property, all required more formal and extensive contracts, both practically and as matters of customary form.").

Plaintiff has failed to provide *any* material terms of the alleged oral contact.  Under these circumstances, the court is hard pressed to find that the parties intended to enter into a binding contract.  Thus, the court finds that summary judgment on the breach of an oral contract claim is appropriate since there is no indication the parties intended to be bound.  However, the court is aware that, generally, "the issue of whether (and when) the parties intended to be bound is a factual issue that should . . .[be] submitted to the jury." *International Minerals and Resources, S.A. v. Pappas*, 96 F.3d 586, 593 (2d Cir. 1996); *Consarc Corp.*, 996 F.2d at 574 ("[w]hether a contracting party intends not to be bound in the absence of a writing is a question of fact to be presented for resolution to the fact finder at trial.").  Even assuming, *arguendo,* that the court finds material issues of fact with respect to whether or not the parties intended to be bound in the absence of a written contract, summary judgment is appropriate because plaintiff has not

---

[5]        This does not create a genuine issue of material fact with respect to plaintiff's unjust enrichment claim because the court believes that there are still material issues of fact with respect to whether defendants benefitted from plaintiff's work.

sufficiently pled that defendants breached the oral agreement. *See Gambello v. Time Warner Communications, Inc.*,186 F. Supp. 2d 209, 225 (E.D.N.Y. 2002)

Plaintiff's deficiencies in its breach of contract claim are glaring, and leave nothing for a finder of fact. A claim for breach of contract under New York law requires a plaintiff to prove: (1) that an agreement existed between it and defendant; (2) what the respective obligation of the parties were; (3) that the plaintiff performed its obligations under the agreement; (4) that the defendant breached the agreement by failing to perform its obligations; and (5) that the plaintiff suffered damages as a result of the breach. *See Cleveland Wrecking Co. v. Hercules Const. Corp.,* 23 F. Supp. 2d 287, 294 (E.D.N.Y. 1998). As pleaded, and in light of the evidence submitted on this motion for summary judgment, there are no genuine issues of material fact with respect to any element of plaintiff's breach of contract claim to submit to a jury.

*Unjust Enrichment Claim*

Plaintiff also seeks to recover on a theory of "unjust enrichment." "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *See Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotation marks omitted). A claim of unjust enrichment can only be supported if there is no contract. *See Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.,* 448 F.3d 573, 586 (2d Cir. 2006) ("'quasi contract only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment. . . a quasi-contractual obligation is one imposed by law where there has been no agreement or expression of assent, by word or act, on the part of either party involved."); *Capital*

*Distributions Services, Ltd. v. Ducor Exp. Airlines, Inc.,* 440 F. Supp. 2d 195, 208 (E.D.N.Y. 2006). Since there is no contract in effect here, plaintiff may be able to sustain its unjust enrichment claim, assuming that defendants·cannot demonstrate that there are no issues of fact with respect to plaintiff's claim.

The major point of contention between the parties is whether defendants benefitted from plaintiff's work. Plaintiff claims defendants benefitted from its work because without it defendants never would have received the contract from the Port Authority. Defendants contend assert that plaintiff's work was done for plaintiff's own benefit, namely to assess the cost of the project and its potential profitability for plaintiff. Defendants further claim that, even taking all facts in the light most favorable to plaintiff (as the court is required to do), plaintiff conferred an indirect benefit on defendants, and therefore cannot support a claim for unjust enrichment. Because material issues of fact exist with respect to the work done by plaintiff, who it was intended to benefit and whether a benefit was conferred upon defendants, summary judgment is inappropriate at this time. *See in re Canon Cameras,* 05 CV 7233, 2006 WL 1751245, *1 (S.D.N.Y. June. 23, 2006) ("whether defendant received any benefit from plaintiffs . . . is a question of fact."). Defendants have made only conclusory allegations that the work performed by plaintiff was for its own benefit, and this is not enough to support summary judgment. *C.f. State Farm Mut. Auto. Ins. Co. v. CPT Medical Services, P.C.,* 375 F. Supp. 2d 141, 154 (E.D.N.Y. 2005) (summary judgment may be appropriate where a plaintiff cannot show that the defendant benefitted.).

*Quantum Meruit*

To recover in quantum meruit under New York law, a party must establish "(1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham,* 185 F.3d 61, 66 (2d Cir. 1999). Defendants claim that plaintiff cannot establish a cause of action for unjust enrichment because it did not perform services in good faith. However, other than the fact that the Port Authority had yet to approve the project, there is no evidence that plaintiff did anything other than what it believed was requested by defendants. There is also no evidence in the record, other than defendants' blanket and conclusory denial, that defendants did not accept the services. To the contrary, Narby states that defendants were aware of all the services being provided by plaintiff and approved of them. *See AG Ltd. v. Liquid Realty Partners*, LLC, 448 F. Supp. 2d 583, 589 (S.D.N.Y. 2006) (denying summary judgment where the plaintiff had proof of each element of the claim). In any event, material issues of fact exist with respect to whether plaintiff performed the services in good faith, the services were accepted by defendants, and plaintiff expected compensation for the services.

Plaintiff may be entitled to prove the value of the services in any number of ways, including by reference to its invoice or the fair market value of the services provided. *Carey v. Mui-Hin Lau*, 140 F. Supp. 2d 291, 297 (S.D.N.Y. 2001) ("[b]ecause defendants did not object to the invoices, they accepted the charges as the fair and reasonable value of plaintiff's services."); *Whitmyer Bros. v. New York*, 47 N.Y.2d 960, 962 (1979) ("claimant, seeking the reasonable value of the work actually performed . . . was entitled to recover damages measured on a

quantum meruit basis: to wit, actual job cost plus allowance for . . . overhead and profit."). Summary judgment in favor of defendants on plaintiff's quantum meruit claim is inappropriate at this time.

### Account Stated

In order properly to assert an account stated claim, a complaint must include allegations that: (1) an account was presented; (2) it was accepted as correct; and (3) debtor promised to pay the amount stated. *See Leepson v. Allan Riley Co., Inc.,* 04 Civ. 3720, 2006 WL 2135806, *4 (S.D.N.Y. July 31, 2006). According to plaintiff, defendants were invoiced for plaintiff's work in July 2004. Defendants retained the invoices, and, assuming the truth of plaintiff's allegations, defendants even admitted owing the money and promised to pay when money became available. Even if the promise was not explicit, as plaintiff claims it was, acceptance of the invoices and a promise to pay the amount stated is implied where a defendant receives and retains invoices without objecting in a reasonable period of time. *Ruskin, Moscou, Evans & Faltischek, P.C. v. FGH Realty Credit Corp.*, 228 A.D.2d 294, 295-296 (1st Dep't. 1996). Defendants, for their part, claim only that they offered to pay in an effort to prevent plaintiff from contacting the Port Authority, but that they objected to the invoices from the very beginning. On the facts presented, there is insufficient undisputed evidence to grant defendants summary judgments on plaintiff's account stated claim.

## **Conclusion**

Accordingly, for the reasons set forth above, defendants' summary judgment motion is granted as to plaintiff's First Cause of Action for breach of an oral agreement, and that claim is dismissed. Defendants' motion to dismiss is denied as to plaintiff's Second, Third and Forth Causes of Action. This matter is referred to the magistrate judge for discovery and further pre-trial proceedings.


SO ORDERED.


DATED:          Brooklyn, New York
                      September 19, 2007


                                                    _____/s/_____
                                                          DORA L. IRIZARRY
                                                      United States District Judge